**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CHARLES KARLIN, M.D.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 09-2079-JAR** |
| ) | |
| **THE PAUL REVERE LIFE** ) | |
| **INSURANCE COMPANY and** ) | |
| **THE UNUM GROUP f/k/a** ) | |
| **UNUMPROVIDENT CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

After his claim for total disability benefits under a disability insurance policy was denied, plaintiff Charles Karlin, M.D. filed this lawsuit against defendants, The Paul Revere Insurance Company and The Unum Group fka Unumprovident Corporation, alleging claims for breach of contract, attorney's fees pursuant to K.S.A. § 40-256, negligent misrepresentation, and declaratory judgment. This matter is before the Court on the parties' cross-motions for summary judgment (Docs. 18, 21). For the reasons set forth in detail below, the Court grants defendants' motion in part on the issue of whether the Policy is ambiguous and on Dr. Karlin's negligent misrepresentation claim, and denies both parties' motions on the issue of whether Dr. Karlin is totally disabled, without prejudice for renewal.

## I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8]  Rather, the nonmoving party must

---

[1]Fed. R. Civ. P. 56(c).

[2]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[3]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[4]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[5]*Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

[7]*Anderson*, 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[8]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

"set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[10] Rule 56(e) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[11] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12] " "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

---

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[10]*Adams*, 233 F.3d at 1246.

[11]Fed. R. Civ. P. 56(e).

[12]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13]*James Barlow Family Ltd. P'ship v. David M Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## II.    Uncontroverted Facts

The following facts were jointly submitted by the parties,[16] who stipulate that no genuine issue exists with respect to these facts, which are deemed admitted for purposes of the pending cross-motions for summary judgment.

### The Parties.

On August 4, 1992, The Paul Revere Life Insurance Company ("Paul Revere")[17] issued individual disability income policy, No. 0102576479 ("the Policy") to Charles A. Karlin, M.D. ("Dr. Karlin"), who purchased the Policy at that time.  The policy was delivered to Dr. Karlin in Kansas, and is attached to the Complaint as Exhibit 1.

Dr. Karlin is a 60-year-old medical doctor who has practiced in the area of radiology for more than twenty-five years.  He is a full partner in two medical practices, Alliance Radiology and Johnson County Imaging.  At various times during his career, Dr. Karlin has practiced both interventional radiology and general radiology.  Interventional radiology uses radiological images to perform both surgical and non-surgical procedures.  General, or "diagnostic" radiology involves the review of x-rays, MRI scans and other radiologic images outside of the operating room for diagnostic purposes.

---

[16](Doc. 19.)

[17]Plaintiff's Complaint identifies Unum Group as a party to the case.  Unum Group is merely the parent company of Paul Revere (Doc. 6), and Paul Revere is the actual contracting party with Dr. Karlin.

**The Policy.**

The Policy provides that Paul Revere "will periodically pay a Total Disability benefit during Your Total Disability." "Total Disability" is defined as:

> because of Injury or Sickness:
>
> a. You are unable to perform the important duties of Your Occupation; and
>
> b. You are receiving Physician's Care.

The Policy defines "Your Occupation" as "the occupation or occupations in which You are regularly engaged at the time Disability begins."

> "Residual Disability" is defined as:
>
> a. (1) You are unable to perform one or more of the important duties of Your Occupation; or
>
> (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and
>
> b. You are receiving Physician's Care. . . .
>
> c. You are not Totally Disabled.

Residual Disability also requires a "Loss of Earnings," which is defined by the Policy to mean loss of at least 20% of prior earnings.

The application for disability insurance submitted by Dr. Karlin is attached to the Policy. In the application, dated January 14, 1991, Dr. Karlin identified his "Occupation" as "Radiologist-Physician, M.D."

In the event of Total Disability, Dr. Karlin's Policy provides a monthly benefit of $16,600 after a 90-day elimination period. Dr. Karlin's Policy also contains a cost-of-living

adjustment provision and a rider extending the maximum benefit period through his entire lifetime.

In a letter from Paul Revere to Dr. Karlin dated March 17, 1993, Paul Revere stated:

> We are glad to welcome you as a policyholder, and to clarify what we mean in your policy by "Your Occupation."
>
> . . . We understand your current occupation to be that of a specialist in the field of diagnostic radiology.
>
> If immediately prior to the time disability begins, you were performing the important duties of that specialty and then, were unable to perform those duties, you would be considered unable to perform the important duties of Your Occupation. The fact that you could be working in some other occupation or specialty would not preclude the payment of Total Disability benefits.
>
> If you returned to your occupation performing some or all of your important duties, you could be eligible for Residual or Recovery benefits based on proportionate income loss due to the injury or sickness.

**Dr. Karlin's First Claim for Benefits.**

In May 2004, Dr. Karlin first made a claim for "Total Disability" under the Policy. The claim forms did not identify an onset date of disability. In his claim, Dr. Karlin listed his occupation as "Physician interventional radiologist." He also listed his job title as "Physician" and identified his fields of specialty as "Interventional & Neuro Radiology." Dr. John Browne, Dr. Karlin's treating physician, listed his diagnosis as "Rt. Knee end stage patellofemoral degenerative joint disease." Dr. Karlin maintained that he could no longer practice as an interventional radiologist because, as a result of his knee condition, he could not stand for long

periods of time.  As a result of his knee pain, Dr. Karlin stated that he switched from performing the duties of an interventional radiologist to those of a diagnostic radiologist.

In the course of subsequent investigation by Paul Revere, Dr. Karlin stated that his onset of disability was May 1, 2004, when a newly hired radiologist took over Dr. Karlin's interventional radiology duties, but that he had resumed his interventional radiology duties when his replacement left the practice on January 31, 2005.

On December 1, 2004, Paul Revere referred Dr. Karlin's claim for a "Vocational Rehabilitation Review."  The referral stated: "The insured is an interventional radiologist."

On February 24, 2005, Dr. Karlin notified Paul Revere that, because of personnel changes at his practice, he had temporarily resumed interventional radiology duties as of February 1, 2005.  Dr. Karlin continued to pursue benefits under the Policy for the period ending February 1, 2005.

On March 11, 2005, Paul Revere notified Dr. Karlin that it was paying Total Disability benefits from May 1, 2004 through February 1, 2005, less the 90-day elimination period.  Dr. Karlin's Total Disability benefits for this period totaled $100,706.66.  The March 11, 2005 letter stated:

> We also understand that you will continue to work as an interventional radiologist until a replacement is hired by your employer.  At that time you will consider right knee surgery, and after your surgery, you plan to return to work as a general diagnostic radiologist.  We would like to inform you that, should you pursue further disability benefits in the future, we will need additional information to verify your status at that time.

**Dr. Karlin's Second Claim for Benefits.**

On March 24, 2006, Dr. Karlin submitted a second claim form, again alleging Total Disability from his occupation resulting from degenerative joint disease in his right knee. His claim form noted that he had undergone a second surgery on his right knee on February 3, 2006. His claim form stated an onset of disability of February 20, 2006 and that he had income of $600,117.10 in 2005. Dr. Karlin also submitted an "Attending Physician's Statement" from his orthopedic surgeon, Dr. Jon Browne. In that statement, Dr. Browne described "the activities [Dr. Karlin] should not do" as "No prolonged standing with lead apron" and "no bending." He added" "radiology reading only!"

Paul Revere had a "clinical review" performed of Dr. Karlin's records that was completed on April 17, 2006.

In a supplemental disability statement submitted by Dr. Karlin on May 10, 2006, Dr. Karlin stated that he continued to intermittently perform interventional radiology procedures and that he would continue to do so through July 1, 2006, when a newly hired interventional radiologist would take over those duties for Dr. Karlin's practice. Dr. Karlin characterized the extent of his radiology duties during that time by stating, "I immediately dropped my procedures to 30% or less of the entire interventional workload from February 2006 through June 2006. Dr. Karlin also stated that during that time he was doing "7-10 days per month of interventional procedures." Dr. Karlin later changed his claim to reflect an early onset date of July 1, 2006.

In January 2007, Paul Revere requested and received a "Vocational Rehab" review. The vocational-rehab report stated:

There was a significant decline in the insured's interventional work after 6/06. Although the insured continued to perform some interventional work from 6/06-12/06, it no longer represented the majority of his billing. This change in work activity is seen in both the number of interventional procedures performed after 6/06 as well as the percentage of billing attributed to interventional procedures.

Rob Carey, the Paul Revere representative who signed the letter denying Dr. Karlin's claim, drafted a "Phone Memo" dated March 29, 2007 regarding a conversation with Dr. Karlin's agent. In it, Carey states: "I reiterated that we understand that interventional radiology procedures were the most important duties but that diagnostic procedures were also important duties."

Paul Revere investigated the claim until, on April 24, 2007, Paul Revere wrote a letter to Dr. Karlin denying the claim for the reasons stated therein. The letter stated:

Based on the information we have concluded that the stand alone diagnostic procedures performed through Johnson County Imaging plus 70% - 80% of the diagnostic procedures (diagnostic procedures not associated with interventional procedures) performed through Alliance and any diagnostic performed for US X-Ray and College Park are important duties of your occupation prior to February 2006.

Based on the above analysis we have concluded that both interventional and diagnostic radiological procedures are important duties of your occupation.

**Appeal of Benefits Denial.**

Dr. Karlin, through counsel, appealed Paul Revere's denial of benefits by letter dated May 14, 2008. In the letter, his attorneys stated that Dr. Karlin "engaged in two occupations—interventional radiology and traditional radiology" but that "his primary

occupation was interventional radiology."

In response to the appeal request, Paul Revere undertook review of the file and gathered additional information. By letter dated September 18, 2008, Paul Revere affirmed its denial of Dr. Karlin's claim for the reasons stated therein. The letter stated:

> In order for Dr. Karlin to be eligible for Total Disability benefits, he must be unable to perform the important duties of his occupation. We remind you Occupation in Dr. Karlin's policy is defined as the occupation or occupations in which You regularly engaged at the time disability begins. By your own admission, in your letter of May 14, 2008, "Dr. Karlin engaged in two occupations—interventional radiology and traditional radiology." The important duties of Dr. Karlin's occupations are the performance of interventional radiological procedures and diagnostic radiological procedures. Dr. Karlin continues to perform all the duties of a Diagnostic Radiologist and up to December 2006 and possibly later, some of the duties of an Interventional Radiologist. As he is able to engage in some of the duties of his occupation, he is not eligible for Total Disability benefits . . . .

Dr. Karlin continues to work as a diagnostic radiologist and has had no loss in earnings attributable to his alleged disability.

**This Lawsuit.**

Dr. Karlin filed this lawsuit on February 17, 2009. He brings four claims for relief: (1) breach of contract, (2) attorney's fees under K.S.A. § 40-256, (3) negligent misrepresentation, and (4) declaratory judgment. In his Complaint, Dr. Karlin alleged that he "always has performed general radiology tasks, such as reading x-rays and other radiological exams. Many of these tasks are ancillary to planned or potential Interventional Radiology procedures, but many are wholly separate from Interventional Radiology. The Policy was delivered to Dr.

Karlin in Kansas, and the misrepresentations alleged by Dr. Karlin took place in Kansas.

## III.    Rule 56(f)

Under Rule 56(f), the court may stay or deny a motion for summary judgment to allow further discovery if the nonmovant states by affidavit that he needs additional time to develop evidence to oppose the motion.[18]  The decision whether to grant a Rule 56(f) motion lies within the sound discretion of the court.[19]  The Rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.[20]

The nonmovant must satisfy several requirements to obtain relief under Rule 56(f).  By affidavit, he must explain: (1) why facts precluding summary judgment are unavailable; (2) what probable facts he can find through further discovery; (3) what steps he has taken to obtain such facts; and (4) how additional time will allow him to controvert facts.[21]

In this case, the parties agreed to submit the instant cross-motions for summary judgment on stipulated facts and to forego discovery for now, in order to obtain an opinion from the Court on the meaning of the Policy.  Although defendants' motion limits the facts to those stipulated by

---

[18]*Price v. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000).

[19]*Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1553-54 (10th Cir. 1993).

[20]Fed. R. Civ. P. 56(f).

[21]*Price*, 232 F.3d at 783 (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)).

the parties, Dr. Karlin's motion and briefs in support rely on nineteen paragraphs of additional "supplemental" uncontroverted facts and his own affidavit in support,[22] attesting to the nature of his disability and details of his duties as an interventional radiologist.

In response, defendants filed a Rule 56(f) affidavit.[23] Christopher Leopold, an attorney for defendants, states that Dr. Karlin attached to his affidavit a previously undisclosed document from Hokanson, Lehman & Stevens, Inc. ("Hokanson"), an insurance brokerage that marketed Paul Revere LTD products to Radiology Associates. Leopold states that defendants need to conduct discovery on some of the factual averments in plaintiff's statement of additional facts, including deposing plaintiff about his job duties, practice responsibilities, physical abilities, statements made to him about the contractual requirements, employment history and educational background, sources of income, decision to return to work after claiming to be disabled, and any changes in his practice or job duties during 2004 through 2006. Leopold also states that defendants need to subpoena documents from plaintiff's two practice groups as well as other entities for whom he did work, and gather information about what types of procedures he performed for these entities, the job duties and responsibilities associated with those procedures, the income or earnings associated with his work with those entities, and any changes in his practice or job duties during 2004 through 2006. Leopold states that defendants also need to depose several individuals regarding plaintiff's job duties and medical condition, as well as representatives of Hokanson about statements allegedly made to plaintiff concerning the contractual requirements of the Policy and about Hokanson's relationship with Alliance

---

[22](Doc. 20, Ex. 1.)

[23](Doc. 28, Ex. 1.)

Radiology in order to determine if an agency relationship existed.

The Court finds that defendants' affidavit satisfies the requirements of Rule 56(f). Notably, the parties agreed to follow a procedure for filing early summary judgment motions before discovery had been completed. Allowing Dr. Karlin's supplemental facts and affidavit to be considered under these circumstances would be inappropriate. The nature and circumstances of Dr. Karlin's "important duties" are central to the remaining issue pending before the Court. Rule 56(f) rests on the principle that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."[24] As discussed further below, in the interests of justice, the Court denies plaintiff's motion without prejudice for renewal on the issue of whether Dr. Karlin is "totally disabled," and will consider only those facts stipulated to by the parties in considering the remaining issues.

## IV. Discussion

### A. Breach of Contract

Dr. Karlin contends that Paul Revere breached its contract with him by denying his claim for total disability benefits. This dispute turns on the meaning of "Total Disability" as delineated in the Policy, which requires the Court to address two issues: 1) whether the Policy is ambiguous; and 2) whether Dr. Karlin was unable to perform any of the important duties of his occupation at the time of his disability. The Court addresses each in turn.

---

[24] *Price*, 232 F.3d at 783 (quotation omitted).

## 1.    Ambiguity

Defendants argue that in order to be totally disabled, Dr. Karlin must be unable to perform "any" of the important duties of his occupation.  Defendants contend that because Dr. Karlin still performs diagnostic radiology, he is not totally disabled and therefore not entitled to total disability benefits.  Dr. Karlin argues that the Policy's definition of total disability is ambiguous and must be interpreted in the manner that is most favorable to him, meaning that he only has to be unable to perform one important duty to be totally disabled.

In resolving this issue, it is well settled that this Court must attempt to ascertain and apply state law, which in this case is the law of Kansas.[25]  The Court must look to the rulings of the state's highest court and, where no controlling state decision exists, the Court must endeavor to predict how the state's highest court would rule.[26]  The Court should consider analogous decisions by the state supreme court, decisions of lower courts in the state, decisions of federal and other state courts, and the general weight and trend of authority.[27]  Ultimately, the Court's task is to predict what decision the Kansas Supreme Court would make if faced with the same facts and issue.[28]

In Kansas, the insured bears the burden of proving entitlement to benefits under a

---

[25]*Wade v. Emasco Ins. Co.*, 483 F.3d 67, 665 (10th Cir. 2007).  The parties agree that Kansas law applies.

[26]*Id.*

[27]*MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 463 F.3d 1257, 1262 (10th Cir. 2006).

[28]*Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006).

disability policy.[29]  The interpretation of an insurance contract is a question of law.[30]  If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary and popular sense and according to the sense and meaning of the terms used.[31]  An insurance policy is ambiguous when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language.[32]  An ambiguity does not exist merely because the parties disagree on the interpretation of the language.[33]

To determine whether an insurance contract is ambiguous, the Court must not consider what the insurer intends the language to mean.  Instead, the Court must view the language as to what a reasonably prudent insured would understand the language to mean.[34]  This does not mean that the policy should be construed according to the insured's uninformed expectations of the policy's coverage.[35]  Courts should not strain to find an ambiguity when common sense shows there is none.[36]  The Court must consider the terms of an insurance contract as a whole, without fragmenting the various provisions and endorsements.[37]  "As a general rule, exceptions, limitations, and exclusions to insurance policies are narrowly construed.  The insurer assumes

---

[29]*See Brown v. Metro. Life Ins. Co.*, 203 P.2d 150, 154 (Kan. 1949).

[30]*Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003) (citing *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998)).

[31]*Id.*

[32]*Jones v. Reliable Sec., Inc.*, 28 P.3d 1051, 1059 (Kan. Ct. App. 2001), *rev. denied* 272 Kan. — (2001).

[33]*Id.*

[34]*Bugg*, 962 P.2d at 519.

[35]*Jones*. 28 P.3d at 1059.

[36]*Bugg*, 962 P.2d at 519.

[37]*Id.* at 521.

the duty to define limitations to an insured's coverage in clear and explicit terms."[38]  To restrict or limit coverage, an insurer must use clear and unambiguous language, otherwise, the insurance policy will be construed in favor of the insured.[39]

The Policy provides that in the event of disability, Dr. Karlin would be eligible for total disability or residual disability benefits.  The Policy defines "Total Disability" as occurring when the insured, because of injury or sickness, is unable "to perform the important duties of Your Occupation."  The Policy defines "Your Occupation" as "the occupation or occupations in which You are regularly engaged at the time Disability begins."  To be considered residually disabled under the Policy, an insured must be "unable to perform one or more of the important duties of Your Occupation."

The interplay between the "Total Disability" and "Residual Disability" provisions at issue in this case is an open question under Kansas law.  Dr. Karlin contends that the failure of the Policy to define "important duties of Your Occupation" renders the Policy ambiguous.  Dr. Karlin asks the Court to apply cases that conclude that the definition of "Total Disability" is ambiguous because it is susceptible to multiple interpretations as it does not speak in terms of "any," "all," "some" or "the most important" part of the insured's duties.[40]  Dr. Karlin argues that defendants' interpretation would limit coverage to only the most extreme cases of incapacity.  Defendants contend that the Policy is unambiguous and ask the Court to follow the

---

[38]*Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003).

[39]*Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1220 (Kan. 1998).

[40]*See, e.g., Giddens v. The Equitable Life Assurance Soc'y of the United States*, 445 F.3d 1286, 1297 (11th Cir. 2006); *Dowdle v. Nat'l Life Ins. Co.*, 407 F.3d 967, 970-71 (8th Cir. 2005) (applying Minnesota state law interpreting total disability as requiring the inability to do any of the important duties); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disab. Income Plan*, 85 F.3d 455, 458 (9th Cir. 1996).

line of cases holding that in order to recover total disability benefits, an insured is "obligated to show that his disability prevented him from performing all of those duties, not just some of them.[41]

When construed as a whole, the Court agrees that the Policy language is unambiguous: a person who can perform some but not all of his or her important duties has a "Residual Disability" within the meaning of the Policy, and thus, in order to be eligible for total disability benefits, a person is required to show that he or she is unable to perform any of those important duties. To read it otherwise would not give effect to both parts of the Policy, and renders the term "Residual Disability" superfluous.[42] Although Kansas courts have not weighed in on this issue, this construction conforms with the law of insurance contract construction and the results reached by other courts faced with interpreting identical or substantially identical language.[43] Accordingly, the Court does not consider the various parole evidence that Dr. Karlin cites.[44] Defendants' motion for summary judgment is granted on this issue.

### 2. "Important Duties"

---

[41]*See, e.g., McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 588 (8th Cir. 2002) (holding similar language required inability to do all principal duties); *Hershman v. Unumprovident Corp.*, 660 F. Supp. 2d 527, 532-33 (S.D.N.Y. 2009) (evaluating identical language); *Providence Life & Accident Ins. Co. v. Cohen*, 193 F. Supp. 2d 845, 850 (D. Md. 2002); *Yahiro v. Northwestern Mut. Life Ins. Co.*, 168 F. Supp. 2d 511, 517-18 (D. Md. 2001); *Dym v. Provident Life & Accident Co.*, 19 F. Supp. 2d 1147, 1149-50 (S.D. Cal. 1998); *Simon v. Unum Group*, No. 07-11426, 2009 WL 857635, at *5 (S.D.N.Y. Mar. 30, 2009).

[42]*See Metropolitan Life Ins. Co. v. Strnad*, 876 P.2d 1362, 1371 (Kan. 1994) (holding that "the cardinal rule of contract construction requires courts to determine the parties' intent from the four corners of the instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision.") (citations omitted).

[43]*See id.*

[44]*See Farmland Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 359 F. Supp. 2d 1144, 1152 (D. Kan. 2005).

The Court turns to the issue of whether Dr. Karlin was unable to perform any of the important duties of his occupation at the time of his disability. The Policy does not define "important duties." Kansas courts have recognized, generally, that "[u]nder 'occupational' coverage, if an insured is unable, by reason of his disability, to perform the ususal and customary duties of his actual occupation, disability payments are owing."[45] The parties do not cite, nor did the Court's research find, any Kansas case law defining or discussing the term "important duties" in the context of a total disability clause in an occupation policy. Several other courts have analyzed identical or substantially similar clauses in the context of various occupations, including physicians. Indeed, many of these cases involve occupation policies issued by Paul Revere and/or Unumprovident. The courts agree, generally, that a policy that insures against the inability to work at one's usual occupation does not require total helplessness of the insured, but instead, it is sufficient that the insured cannot perform all the "substantial and material" duties of his occupation in the ususal and customary manner.[46] The parties do not dispute this so-called "substantial performance test," but rather, advocate different approaches to its application under the Policy in this case.

Dr. Karlin argues that the Court should apply a qualitative analysis rather than a quantitative analysis when assessing the "important duties" of his occupation. Dr. Karlin argues the proper standard is whether he can continue in his pre-disability occupation or whether he is essentially performing another occupation altogether, although using some of the skills he

---

[45]*Premsingh v. Phoenix Home Life Mut. Ins. Co.*, No. 99-2028-GTV, 2000 WL 133819, at *4 n.2 (D. Kan. Jan. 19, 2000) (quoting *Moots v. Bankers Life Co.*, 707 P.2d 1083, 1085 (Kan. Ct. App. 1985) (distinguishing "general" disability policies from "occupational" policies)).

[46]10A Couch on Ins. § 147:107 n.63 (collecting cases).

employed in his predisability occupation. If he is prevented from performing some "indispensible" part of his occupation, then he is unable to perform the important duties of that occupation. Dr. Karlin argues that his occupation at the time of his disability consisted predominantly of interventional procedures, and that interventional procedures were the "most important duties" of his occupation as an interventional radiologist. Dr. Karlin urges the Court to follow the line of cases that allow an insured to establish total disability if he is unable to perform the most important or the majority of the substantial and material duties of his occupation.[47] However, several of the cases cited by plaintiff are inapposite to this case because the courts framed the standard in the context of holding that the "total disability" language in the various policies was ambiguous.[48]

Defendants counter that they do not rely on a purely quantitative analysis and under either standard, Dr. Karlin does not meet the Policy's definition of total disability. Defendants maintain that Dr. Karlin's occupation at the time of his disability in June 2006 was that of an interventional radiologist with two important duties—interventional and diagnostic radiology. Alternatively, defendants contend that plaintiff had two separate occupations and remains able to perform one of them, diagnostic radiology. Defendants urge the Court to apply a fact-oriented, functional approach to determining whether an insured is totally disabled, which focuses in part

_____

[47]*See, e.g., Giddens*, 445 F.3d at 1298 (allowing an insured to establish total disability if "he is unable to perform most or the vast majority of the substantial and material duties of his occupation."); *Dowdle*, 407 F.3d at 970 (holding relevant inquiry was whether orthopedic surgeon's disability prevented him from performing the most important part of his occupation); *Raithaus v. Unum Life Ins. Co.*, 335 F. Supp. 2d 1098, 1126-27 (D. Hawaii. 2004) (holding relevant inquiry was what were the duties the insured was expected to perform in his predisability profession and whether he could continue to work in that occupation without performing any of those duties); *Gross v. UnumProvident Life Ins. Co.*, 319 F. Supp. 2d 1129, 1146, 1153 (C.D. Cal. 2004) (holding relevant inquiry was whether insured is essentially performing a different occupation altogether, although using some of the skills acquired in his predisability occupation).

[48]*See Giddens*, 445 F.3d at 1298; *Dowdle*, 407 F.3d at 970.

on signs of "professional transition" in the plaintiff's occupation.[49]

In *Hershman v. Unumprovident Corp.*,[50] cited by defendants in support of their position, the court applied New York law in examining a disability claim made by a cardiologist who claimed that he was disabled because he could no longer practice "invasive cardiology."[51] The relevant language in Dr. Hershman's policy, including the definition of "Total Disability" and "Your Occupation" is identical to the language in Dr. Karlin's policy.[52] Dr. Hershman claimed that pain in his lower back, most likely caused and aggravated by the heavy lead apron he was required to wear during invasive procedures, caused his disability.[53] Dr. Hershman stopped practicing invasive cardiology procedures, but continued to practice "consultative" cardiology, examining patients in his office.[54] The court noted that New York courts had construed language substantially similar to "important duties" to mean that an insured is totally disabled if "he or she is no longer able to perform the 'material' and 'substantial' responsibilities of his or her job."[55] The court explained, "[p]ut differently, an insured is totally disabled where his condition prevents him from performing work 'of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties. . . .'"[56] "The [total

---

[49]*See, e.g., Hershman v. Unumprovident Corp.*, 660 F. Supp. 2d 527 (S.D.N.Y. 2009) (collecting cases).

[50]*Id.*

[51]*Id.* at 528.

[52]*Id.* at 529.

[53]*Id.*

[54]*Id.* at 530.

[55]*Id.* at 531 (quoting *Klein v. Nat'l Life of Vt.*, 7 F. Supp. 2d 223, 227 (E.D.N.Y. 1998)).

[56]*Id.* (quotation omitted).

disability] question entails a 'fact-oriented, functional approach that look[s] to the professional activities in which the insured was regularly engaged. . . .'[57]

The court noted that under this rule, if an insured routinely performs a specialty "but also devotes substantial time" to a non-specialty practice, or the non-specialty practice is not merely "incidental" to the specialty practice, the insured is not totally disabled by an inability to perform the specialty.[58]  Thus, the court found, Dr. Hershman was totally disabled if his back injury prevented him from performing work "of the same general character . . . requiring similar skills and training" as that which he previously performed.[59]  "To the extent his pre-disability work encompassed more than one distinct set of occupational duties—if he did, as defendants argue, practice both invasive and non-invasive cardiology, and if his non-invasive work was not 'incidental' to his invasive surgeries—he is not totally disabled if he is able to perform either occupation."[60]

In ruling for the insurance company, the court found that there was "far too much continuity between [plaintiff's] work before and after the onset of his back condition to sustain a 'total disability' finding."[61]  The "only professional consequence" of Dr. Hershman's disability was his inability to perform invasive procedures, while everything else remained the same,

---

[57]*Id.* (quoting *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 125 (2d Cir. 2000) (quoting *Klein*, 7 F. Supp. 2d at 227).

[58]*Id.* at 532 (citations omitted).

[59]*Id.* at 533.

[60]*Id.*

[61]*Id.*

including his practice with two practice groups and his income.[62]  "[I]f [plaintiff] had switched into a specialty that did not comprise more than an incidental portion of his prior practice, one would expect to observe signs of professional transition."[63]  Additionally, while acknowledging that loss in income was not required by the policy, the court noted that "trends in net income are relevant to the question of whether the insured's disability actually caused a change in occupation."[64]  The court concluded, "[a]t best, then, plaintiff was a cardiologist with two sets of duties, consultative and invasive," and his inability to do one set of duties did not satisfy the definition of total disability, which required him to be unable to do both.[65]

The Court has reviewed the cases cited by the parties and finds the approach taken by the Southern District of New York both persuasive and compatible with the limited guidance provided by Kansas courts.  In fact, the standard set forth in *Hershman* is not unlike that articulated in several cases cited by Dr. Karlin.  In *Gross v. Unumprovident Life Insurance Co.,*[66] for example, the insured's policy also utilized the "important duties" language as a requirement for total disability.[67]  Applying California law, the court found that in order to determine whether the insured, an orthopedic surgeon, was totally disabled, "it is necessary to determine the contours of Plaintiff's pre-disability practice in order to ascertain which duties were important and which were merely incidental and to determine whether he continues to perform his pre-

---

[62]*Id.*

[63]*Id.* at 535.

[64]*Id.* at 534 n.4.

[65]*Id.* at 533-34.

[66]319 F. Supp. 2d 1129 (C.D. Cal. 2004).

[67]*Id.* at 1134.

disability duties in substantially the same manner."[68]  And, in *Raithaus v. UNUM Life Insurance Co. of America*,[69] the court held that determining whether the insured was totally disabled required a qualitative analysis into whether surgery was a "material and substantial duty" of the plaintiff's regular occupation as a urologist.  The court explained, "[i]n other words, what were the duties Plaintiff was expected to perform as a urologist? And, could plaintiff work as a urologist without performing any of those duties?"[70]

Defendants argue that the stipulated facts demonstrate that diagnostic radiology was an important duty of Dr. Karlin's pre-disability occupation because, as in *Hershman*,  there was no sign of professional transition after the onset of his disability.  As the parties stipulate, Dr. Karlin admits that a portion of his practice in the months leading up to his claim for benefits was made up of diagnostic radiology, and that he earns the same amount of money as he did prior to his disability.  Dr. Karlin counters, however,  that defendants' statements about the nature and amount of his diagnostic work at the time in question are misleading, as he scaled back his interventional duties in stages, and that a percentage of his diagnostic work was incidental to interventional procedures.  Given the "unique and specialized nature" of interventional radiology, and its prominence in his pre-disability occupation, Dr. Karlin argues that his disability has forced him out of that occupation and into another.

Applying the functional, fact-based analysis articulated above, the Court is unable to rule for either party as a matter of law on the present record.  Although *Hershman* was decided on

---

[68]*Id*. at 1146.

[69]335 F. Supp. 2d at 1126-27.

[70]*Id*. at 1127.

summary judgment, the Court notes that the record before that court was more extensive than in this case.[71] The stipulated facts present minimal information on the nature of Dr. Karlin's duties as an interventional radiologist leading up to the date of his disability, as illustrated by Dr. Karlin's supplemental facts and affidavit and as outlined in defendants' responsive affidavit lodged under Rule 56(f). Accordingly, the Court denies both parties' motions for summary judgment on this issue, without prejudice to later renewal after discovery has been completed.[72]

## B.     Statute of Repose

Count IV of Dr. Karlin's Complaint asserts a claim for negligent misrepresentation. Dr. Karlin states that when he purchased the Policy, an unidentified agent of defendants misrepresented certain terms of the Policy to him. Defendants argue that the ten-year statute of repose bars Dr. Karlin's negligent misrepresentation claim.[73]

Kansas law provides a two-year statute of limitations for fraud and tort claims, including plaintiff's claim for negligent misrepresentation.[74] Under Kansas law, the statute of limitations begins to run when the claim accrues, which for certain tort claims occurs when the fact of the injury becomes "reasonably ascertainable" to the injured party.[75] K.S.A. § 60-513(b) provides, however, that "in no event shall an action [subject to the two-year statute of limitation] be

---

[71]*See Hershman*, 660 F. Supp. 2d at 528-31.

[72]The Amended Scheduling Order entered July 12, 2010 (Doc. 36) sets a discovery deadline of January 28, 2011, a dispositive motions deadline of April 6, 2011, and a trial date of September 6, 2011.

[73]Defendants were granted leave to amend their Answer to assert the statute of repose as an affirmative defense (Doc. 23.)

[74]*See* K.S.A. § 60-513(b); *Roof -Techs Int'l, Inc. v. Kansas*, 57 P.3d 538, 545-46 (Kan. Ct. App. 2002).

[75]K.S.A. § 60-513(b).

commenced more than 10 years beyond the time of the act giving rise to the cause of action."

This ten year statute of repose "require[s] a negligence action to be brought within 10 years of

the wrongful act."[76]  "Statutes of repose are generally substantive and abolish a cause of action

after a specific time period, even if the cause of action may not have accrued yet."[77]  In this case,

the wrongful act in question is the statement made at the time Dr. Karlin purchased his Policy in

1992.  This lawsuit was not filed until February 2009, more than ten years after the wrongful act.

Dr. Karlin does not dispute that § 60-513(b) applies to his negligent misrepresentation

claim or that the statements at issue occurred outside the ten-year statute of repose.  Instead, he

asserts the defense of equitable estoppel, arguing that Paul Revere's statements and actions

between 1993 and 2005 induced him to believe that the alleged misrepresentation was true.

Specifically, Dr. Karlin contends that he relied on statements by Paul Revere's agents that the

Policy's definition of "total disability" included the insured's inability to perform a subspecialty

within the specialty of radiology.  Because Dr. Karlin reasonably believed that he had no cause

of action for misrepresentation, he argues that defendants are estopped from asserting the statute

of repose as a defense.

The Court disagrees.  To the extent the defense of equitable estoppel bars the application

of the statute of repose, it appears to be limited to claims for fraud.  In *Robinson v. Shah*,[78] a

divided panel allowed the defense in a medical malpractice case "where the defendant's own

---

[76]*Klose v. Wood Valley Racquet Club, Inc.*, 975 P.2d 1218, 1222 (Kan. 1999) (citing *Dobson v. Larkin Homes, Inc.*, 832 P.2d 345, 347 (Kan. 1992)).

[77]*Morrison v. Watkins*, 889 P.2d 140, 149 (Kan. Ct. App. 1995) (citing *Harding v. K.C. Wall Prods., Inc.*, 831 P.2d 958, 968 (Kan. 1992)).

[78]936 P.2d 784 (Kan. Ct. App. 1997).

fraudulent concealment has resulted in the delay in discovering the defendant's wrongful conduct."[79]  There is no question that the claim in this case is for negligence rather than fraud.[80]  Defendants' motion for summary judgment is granted on this claim.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (Doc. 21) is GRANTED in part with respect to the question of whether the Policy is ambiguous and with respect to plaintiff's negligent misrepresentation claim;

**IT IS FURTHER ORDERED** that the parties' cross-motions for summary judgment (Docs. 18, 21) are DENIED without prejudice to renew with respect to the issue of whether plaintiff is totally disabled as defined by the Policy and consistent with the rulings herein.

**IT IS SO ORDERED.**

---

[79]*Id*. at 798.

[80]*See Bonin v. Vannaman*, 929 P.2d 754, 762 (Kan. 1996) (declining to decide the question of whether the doctrine of fraudulent concealment expanded the statute of repose because plaintiff did not plead a valid claim for fraud); *see also Stark v. Mercantile Bank, N.A.*, 33 P.3d 609, 615 (Kan. Ct. App. 2000) (same).  The Court further notes that § 60-513(b) was amended in 1987 to overrule Kansas case law that provided exceptions to the statute of repose.  *See Dobson,* 832 P.2d at 346-47.  Accordingly, the Court disregards plaintiff's citation to any pre-1987 authority.

**Dated:** September 24, 2010

 S/ Julie A. Robinson

**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**